UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ROLEX WATCH U.S.A., INC.

                            Plaintiff,

        - v -

CHANAN AULOV, UNKNOWN
WEBSITES 1-10, "JOHN DOES" 1-10, and
UNKNOWN ENTITIES 1-10

                            Defendants.
---------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

CV 10-3547 (DLI)(VVP)

       The Honorable Dora L. Irizarry referred this matter to the undersigned for a report and

recommendation as to whether default judgment is appropriate, and if so, as to the amount of

damages to be awarded to the plaintiff Rolex Watch U.S.A., Inc. The plaintiff has asserted

claims against the defendant, Chanan Aulov[1] for (1) trademark counterfeiting, pursuant to 15

U.S.C. § 1114; (2) trademark infringement pursuant to 15 U.S.C. § 1114; (3) trademark dilution

pursuant to 15 U.S.C. § 1125(c); (4) unfair competition, false designation of origin, and false

description pursuant to 15 U.S.C. § 1125(a); and (5) common law unfair competition.[2] The

plaintiff seeks monetary relief, attorney's fees, and a permanent injunction barring the defendant

from infringing the plaintiff's trademarks in the future. Based on the plaintiff's submissions and

---

[1] Rolex dismissed its claims without prejudice against the defendants Unknown Websites 1-10, "John
Does" 1-10 and Unknown Entities 1-10.

[2] As the plaintiff's papers in support of its motion for default seek recovery only under the Lanham Act
for trademark infringement, this report does not address damages under those additional or alternative
causes of action. *See* Plaintiff's Memorandum of Law in Support For the Entry of a Final Judgment and
Injunction by Default Against Defendant Chanan Aulov, dated Sept. 22, 2010 [hereafter "Plaintiff's
Mem."], at 2.

the prior proceedings in this action, the undersigned makes the following recommendations regarding liability and damages.

## I.    BACKGROUND

### A.    The Defendant's Default in This Court

The plaintiff commenced this action on August 3, 2010 and the defendant, Chanan Aulov, was properly served with process.  After several attempts to serve him at his residence, a true copy of the summons in a civil action, civil cover sheet, and complaint were affixed to the door of his residence and another copy was served by first class mail.  *See* Affidavit of Service, dated Aug. 19, 2010 (Docket No. 3). He failed to answer or respond to the complaint, or otherwise move or appear in this action.  *See* Clerk's Certificate of Default as to Defendant Chanan Aulov, dated Oct. 12, 2010, ¶ 2 (Docket No. 8).  The plaintiff moved for a default judgment, and on October 12, 2010, the Clerk of Court entered a default against Chanan Aulov pursuant to Federal Rule of Civil Procedure 55(a).  *Id.*

Because of the default, the well-pleaded allegations of the complaint are deemed admitted, except as to the amount of damages.  *See, e.g. Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009); *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  Even so, "after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  *Leider v. Ralfe*, No. 01-CV-3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (quoting *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).  Put differently, liability does not automatically attach from the well-pleaded allegations of the complaint, as it remains the court's

responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief.  *See Au Bon Pain*, 653 F.2d at 65.

**B.**      **The Facts as Alleged in the Complaint**

The plaintiff, Rolex Watch U.S.A., assembles, finishes, markets, and sells in interstate commerce, high quality Rolex watches, watch bracelets, and related products for men and women.  Complaint ¶ 12.  The plaintiff is the exclusive distributor and warrantor in the United States of Rolex watches, all of which bear one or more of the Rolex Registered Trademarks. Complaint ¶ 10.  Rolex and its predecessors have used the Rolex Registered Trademarks for many years on and in connection with Rolex Watches and related products.  Complaint ¶ 18. Rolex owns numerous trademarks with the United States Patent and Trademark Office (hereafter the "PTO"), including, but not limited to, the trademarks and trade names ROLEX, CROWN DEVICE (design),[3] DATEJUST, SEA-DWELLER, OYSTER, OYSTER PERPETUAL, GMT-MASTER, YACHT-MASTER, SUBMARINER, ROLEX DAYTONA, DAYTONA, EXPLORER II, TURN-O-GRAPH and GMT-MASTER II.  Complaint ¶ 15 & Exhibit 1.  The registrations for each mark (which have been renewed and remain in force), as well as the registration number, date of issuance, and description of goods, are summarized in the table below.  Complaint ¶ 16 & Exhibit 1.

---

[3] The crown device design is reproduced here:



| Trademark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
| CROWN DEVICE | 657,756 | 1/28/58 | Timepieces of all kinds and parts thereof. |
| DATEJUST | 674,177 | 2/17/59 | Timepieces and parts thereof. |
| DAY-DATE | 831,652 | 7/4/67 | Wrist watches. |
| DAYTONA | 2,331,145 | 3/21/00 | Watches. |
| EXPLORER II | 2,445,357 | 4/24/01 | Watches. |
| GMT-MASTER | 683,249 | 8/11/59 | Watches. |
| GMT-MASTER II | 2,985,308 | 8/16/05 | Watches and parts thereof. |
| OYSTER | 239,383 | 3/6/28 | Watches, movements, cases, dials and other parts of watches. |
| OYSTER PERPETUAL | 1,105,602 | 11/7/78 | Watches and parts thereof. |
| PRESIDENT | 520,309 | 1/24/50 | Wristbands and bracelets for watches made wholly or in part or plated with precious metals, sold separately from watches. |
| ROLEX | 101,819 | 1/12/15 | Watches, clocks, parts of watches and clocks, and their cases. |
| ROLEX DAYTONA | 1,960,768 | 3/5/96 | Watches. |
| SEA-DWELLER | 860,527 | 11/19/68 | Watches, clocks and parts thereof. |
| SUBMARINER | 1,782,604 | 7/20/93 | Watches. |
| TURN-O-GRAPH | 2,950,028 | 5/10/05 | Watches and parts thereof. |

The defendant, Chanan Aulov, is not now, and has never been, associated, affiliated, connected with, endorsed or sanctioned by Rolex. Complaint ¶ 38. The defendant's business includes the selling, offering for sale, distributing, promoting and advertising in interstate commerce – through the Internet, through e-mail and in person – watches bearing the Rolex Registered Trademarks that appear on Rolex's products. Complaint ¶ 23 & Exhibit 1. The plaintiff never authorized or consented in any way to the defendant's use of the Rolex Registered Trademarks or marks confusingly similar thereto. Complaint ¶ 40.

Before filing this lawsuit, Rolex discovered several classified advertisements on the website, www.craigslist.org, advertising for sale watches bearing counterfeits and infringements of the Rolex Registered Trademarks. The locations detailed in these listings were South Beach, Florida, Rego Park, New York and Forest Hills, New York. Complaint ¶ 24. The

advertisements contained a phone number that is owned by Aulov.  Complaint ¶ 25.  On or about March 25, 2010 Rolex's investigator met with Aulov at which time he purchased a Rolex Submariner watch for $350.  Complaint ¶ 28.  Upon the completion of the transaction, members of the Miami Beach Police Detectives arrested Aulov.  Complaint ¶ 29.   At the time, he had eleven watches bearing counterfeits of the Rolex Registered Trademarks.  *Id.*  On or about May 21, 2010, after being arrested in Florida, Rolex's counsel discovered about twenty-five additional advertisements on www.craigslist.org that showed that the defendant had resumed posting classified ads for watches bearing the Rolex Registered Trademarks.  Complaint ¶ 31 & Exhibit 3.

These additional listings were referred to Rolex's private investigator in New York who arranged to meet with Aulov to purchase a watch.  Complaint ¶ 32.  On or about June 3, 2010, Rolex's investigator met with Aulov who offered to sell him one Rolex Submariner and one Rolex Daytona watch.  Complaint ¶ 34.  The Investigator purchased the Rolex Submariner watch and on completion of the transaction, members of the New York Police Department arrested Aulov.  Complaint ¶¶ 34-35.  Since March 2010, Rolex has discovered approximately sixty-five postings on www.craigslist.org for watches bearing counterfeits of the Rolex Registered Trademarks.  Complaint ¶ 36.  Moreover, the plaintiff has provided the court with an affirmation stating that, since this lawsuit was filed, the defendant has continued to offer watches bearing counterfeits of the Rolex Registered Trademarks on www.craigslist.org and was arrested in March 2011 in connection with this activity.  *See* Supplemental Affirmation of Walter-Michael Lee in Supp. of Pl.'s Mot. for a Default J. Against Def. Chanan Aulov, dated Mar. 30, 2011, ¶ 3 & Exhibit 1 (Docket No. 17).

## II.   LIABILITY

The Lanham Act, broadly speaking, provides the federal courts with subject matter jurisdiction over matters involving violations of patents and trademarks.  15 U.S.C. §1121.  For relevant purposes herein, a trademark "includes any word, name, symbol, or device, or any combination thereof used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others[.]"  15 U.S.C. §1127.  A trademark is a "registered mark" for purposes of the Lanham Act if it has been "registered in the United States Patent and Trademark Office under this chapter . . . ."  15 U.S.C. § 1127.  Registration of trademarks give registrants the exclusive and incontestable right (with some exceptions not applicable here) to use of the trademarks for commercial purposes.  *See* 15 U.S.C. §§ 1065, 1115.  The Lanham Act correspondingly makes it illegal to "use in commerce any reproduction, *counterfeit*, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a) (emphasis added).  The statute provides for a civil action for infringement for an aggrieved registrant.[4]  15 U.S.C. § 1114(1).  The Lanham Act defines "counterfeit mark" as

> **(i)** a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or

---

[4] The statute also makes it illegal to "reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services, on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive[.]" 15 U.S.C. § 1114(1)(b).

**(ii)** a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of Title 36;

15 U.S.C. § 1116(d).

The complaint establishes the defendant's liability to the plaintiff for trademark infringement through the use of counterfeit marks. The allegations in the complaint as well as the documentation attached to it in the form of exhibits establish that the plaintiff had registered its trademarks with the PTO. *See* Complaint ¶ 16 & Exhibit 1. Without the plaintiff's authorization, the defendant offered for sale, distributed, promoted, and advertised watches bearing counterfeits of one or more of the Rolex Registered Trademarks. Complaint ¶¶ 37, 40. The defendant's use of the plaintiff's trademarks was likely to cause confusion or mistake on the part of consumers by falsely linking the defendant's products to the good will and reputation associated with the plaintiff's trademarks and the Rolex brand. Complaint ¶¶ 41, 43. The plaintiff's allegations, therefore, establish the defendant's liability for trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)(a).[5]

## III.   DAMAGES

The defendant has elected to pursue statutory damages under 15 U.S.C. § 1117(c) of the Lanham Act for eleven Rolex Registered Trademarks counterfeited by the defendant. *See* Plaintiff's Mem. at 9. Federal Rule 55(b) requires the court to make an independent assessment

---

[5] The well-pleaded allegations of the complaint also appear to state a claim for federal trademark dilution, 15 U.S.C. § 1125(c) and unfair competition under Federal and State Law. *See* Complaint ¶¶ 69-93; 15 U.S.C. § 1125(a); *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) (noting that elements of unfair competition under New York common law are the same as Lanham Act with an added "bad faith" component). The plaintiff has only moved to recover damages for the trademark infringement claims, however, and it is therefore not necessary to examine the remaining claims at length.

of damages when deciding a motion for default judgment. *See Securities & Exch. Comm'n v. Management Dyn., Inc.*, 515 F.2d 801, 814 (2d Cir. 1975). Damages are proven through an evidentiary hearing, or through affidavits and other documentary submissions that provide a factual basis for determining the amount of damages to be awarded. *See Greyhound*, 973 F.2d at 158; *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). Having provided notice to the defaulting defendant, the court is able to receive affidavits in lieu of holding an evidentiary hearing on damages. *See, e.g., Transatlantic Marine*, 109 F.3d at 111 ("We have held that, under rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment.'") (quoting *Fustok v. ContiCommodity Services Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). There being no objection by any party to that procedure, the court has received and considered affirmations submitted by the plaintiff, and concludes that they provide a basis for the relief recommended below. The defendant has not made any submissions.

The Lanham Act provides for actual damages, consisting of the defendant's profits, "any damages sustained by the plaintiff," and court costs. *See* 15 U.S.C. § 1117(a). That section also authorizes the court to award treble actual damages. *See id.* Recovery of this nature often proves unwieldy or impractical to determine, especially in the case of a default. *See Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (quoting S. Rep. No. 104-177, at 10 (1995)); *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999); *Latin Am. Music Co. v. Spanish Broad. Sys., Inc.*, 866 F. Supp. 780, 782 (S.D.N.Y. 1994); *Van Der Zee v. Greenidge*, No. 03-CV-8659, 2006 WL 44020, at *1 (S.D.N.Y. Jan. 6, 2006); *Granada Sales Corp. v. Aumer*, No. 02-CV-6682, 2003 WL 21383821, at *2 (S.D.N.Y. June 2, 2003). Moreover, actual damages may in certain cases be quite paltry and may not reflect the

seriousness of the violation nor the need to deter such conduct in the future. *See Guess?, Inc. v. Gold Center Jewelry*, 997 F. Supp. 409, 411 (S.D.N.Y. 1998), *rev'd on other grounds sub nom. Gucci America, Inc. v. Gold Center Jewelry*, 158 F.3d 631 (2d Cir. 1998); *Rodgers v. Anderson*, No. 04-CV-1149, 2005 WL 950021, at *2 (S.D.N.Y. Apr. 26, 2005). Therefore, in lieu of actual damages, the Lanham Act also allows plaintiffs to recover statutory damages for the use of counterfeit marks:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of
>> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).[1] The court is provided with little statutory guidance in determining statutory damages under the Lanham Act, and is thus vested with considerably broad discretion. *See Sara Lee*, 36 F. Supp. 2d at 165-66; *Guess?*, 997 F. Supp. at 411; *see also Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986) (discussing statutory damages under analogous Copyright Act). While statutory damages may exceed actual damages, such an award does not constitute a windfall for prevailing plaintiffs, *see Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 677 F. Supp. 740, 769 (S.D.N.Y. 1988), but rather serves a punitive, deterrent

---

[1] The maximum limits of $200,000 and $2,000,000 were recently increased from $100,000 and $1,000,000 respectively.

function.  *See Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009).

The plaintiff seeks statutory damages under 15 U.S.C. § 1117(c) "per counterfeit mark," totaling $11,000,000.  This figure was computed, in accordance with Section 1117(c), by multiplying $1,000,000 by eleven different marks by one type of good.  The complaint yields strong evidence that the defendant's infringements were willful.  His systematic conduct – through the Internet, through e-mail and in person – marketing and selling watches bearing the Rolex Registered Trademarks, clearly evinces a scheme to trade off the reputation and good will that the plaintiff and its predecessors have established.  Complaint ¶¶ 18-20, 23 & Exhibit 1.  The defendant was also arrested twice for selling goods that infringed on the plaintiff's trademarks, but he continued to sell the products with knowledge that he was committing illegal activity.  *See* Complaint ¶ 31.  Further, the defendant has demonstrated bad faith by continuing to advertise watches bearing the Rolex Registered Trademarks since the filing of this case.  *See* Plaintiff's Mem. at 14; Supplemental Affirmation of Walter-Michael Lee in Supp. of Pl.'s Mot. for a Default J. Against Def. Chanan Aulov, dated Mar. 30, 2011, ¶ 3 (Docket No. 17).  In addition, many courts in this circuit have considered a default as evidence of willfulness for the purposes of determining statutory damages.  *See Luban*, 282 F. Supp. 2d at 124; *Chloe v. Zarafshan*, No. 06-CV-3140, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009); *AW Indus., Inc. v. Sleep Well Mattress, Inc.*, No. 07-CV-3969, 2009 WL 485186, at *4 (E.D.N.Y. Feb. 26, 2009); *Gucci America, Inc. v. MyReplicaHandbag.com*, No. 07-CV-2438, 2008 WL 512789, at *3 (S.D.N.Y. Feb. 26, 2008); *Malletier v. Whenu.com, Inc.*, No. 05-CV-1325, 2007 WL 257717, at *4 (S.D.N.Y. Jan. 26, 2007).  Consistent with the dual compensatory and punitive functions of statutory damages, *see Carducci Leather*, 648 F. Supp. 2d at 504, this overwhelming evidence of

willfulness warrants the application of the enhanced statutory damages available under 15 U.S.C. § 1117(c)(2).

Although willfulness has been established, there is scant evidence in the plaintiff's papers of how extensive or widespread the infringement actually was. While plaintiff arranged two sales to a private investigator and various advertisements have been found on www.craigslist.org since the filing of this case, it is not clear how many sales were actually made or how much profit was generated. The plaintiff argues that since the defendant's business was conducted over the internet, where "a counterfeiter's potential customer base is countless," the court can presume that the defendant's offerings of counterfeit products for sale is elevated. *See* Plaintiff's Mem. at 12. While this is sometimes a factor, the defendant did not operate a website that sold an infinite amount of products, but conducted his business through a website that only sold one good at a time. *See Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-CV-4810, 2011 WL 1131401, at *5 (E.D.N.Y. Mar. 11, 2011) (even where defendant's operation of three websites provided him with a "virtually limitless number of customers" a claim for $1,000,000 per mark was too high). Thus, while the plaintiff's request of $1,000,000 per mark per type of good might be reasonable and in line with other cases, the absence of evidence showing the extent of the defendant's sales of the infringing goods deprives the court of a sound basis in fact for awarding $1,000,000 per infringement. *See Burberry Ltd. v. Euro Moda, Inc.*, 2009 WL 4432678, at *5 ("Most judges have issued awards far below the statutory maximum, particularly where the plaintiff does not have concrete information about the defendant's actual sales figures and profits."); *Pitbull Productions, Inc. v. Universal Netmedia, Inc.*, No. 07-CV-1784, 2007 WL 3287368, at *4 (S.D.N.Y. Nov. 7, 2007) ("In the cases cited by plaintiff awarding the maximum . . . the record included documentation addressing the volume or potential value of infringing goods."). While

the court is *not* conflating statutory damages with actual damages, evidence showing the extent of the defendant's sales can nevertheless inform the determination of statutory, as well as actual damages. *See, e.g.*, *Burberry*, 2009 WL 4432678, at *4-5; *Pitbull Productions*, 2007 WL 3287368, at *2-3.

In order to calculate an award of statutory damages under Section 1117(c), courts have considered factors such as a plaintiff's lost revenue, the size of the defendant's counterfeiting operation, the defendant's cooperation in providing discovery that may help the court estimate damages, the degree of willfulness, and deterrence as it applies both to the defendant and to would-be counterfeiters at large. *Pharel*, 2011 WL 1131401, at *5. Further, in *Nike, Inc. v. Top Brand Co.*, the court found that the "size of the defendants' infringing operations, which led to the production of millions of infringing goods, the willfulness of their conduct, and their behavior in this litigation all weigh towards of grant of the maximum in statutory damages." No. 00-CV-8179, 2006 WL 2946472, at *2 (S.D.N.Y. Feb. 27, 2006). Here, however, the plaintiff has proffered no evidence of the plaintiff's lost revenue, of the size of the defendant's counterfeiting operation, or of the sales or production volume of the infringing goods. While this evidence would be helpful in calculating damages, its unavailability is largely attributable to defendant's failure to appear in this case and participate in discovery. Therefore, while the maximum amount of damages is not warranted, the minimum amount of damages would also not be sufficient to compensate the plaintiff.

Since there is no clear evidence that the defendant's business was highly profitable, looking to similar cases brought by Rolex, I recommend a total of $1,000,000 in statutory damages. *See Pharel*, 2011 WL 1131401, at *6 (awarding a total of $1,000,000 in statutory damages for eight trademark infringements due to an "absence of proof of a substantial or highly

profitable counterfeiting enterprise"); *Rolex Watch USA, Inc. v. Brown*, No. 01-CV-9155, 2002 WL 1226863, at *2 (S.D.N.Y. Jun. 5, 2002) (awarding $1,000,000 in statutory damages without multiplication for more than eight trademarks); *Rolex Watch USA, Inc. v. Jones*, No. 99-CV-2359, 2002 WL 596354, at *6 (S.D.N.Y. Apr. 17, 2002) (awarding $50,000 in statutory damages to Rolex per infringed mark for nine marks); *Rolex Watch USA, Inc. v. Voiers*, No. 99–CV-11328, 2000 U.S. Dist. LEXIS 22127 at *8 (S.D.N.Y. Aug. 10, 2000) (awarding plaintiff a total of $1,000,000 in statutory damages for nine infringed Rolex marks). While the total amount of damages thus awarded – $1,000,000 – is only one-eleventh of what the plaintiff seeks, it more than compensates them for the harm suffered, and should serve as a strong deterrent to future infringements by this and other offenders. Anything greater than that would approach the "windfall" that courts have cautioned against awarding. *See Dae Rim*, 677 F. Supp. at 769; *Century 21 Real Estate LLC v. Bercosa Corp.*, No. 08-CV-3175, 2009 WL 3111759, at *15 (E.D.N.Y. Sept. 18, 2009); *Chanel, Inc. v. Doubinine*, No. 04-CV-4099, 2008 WL 4449631, at *5 (E.D.N.Y. Oct. 2, 2008).

## IV. INJUNCTIVE RELIEF

In addition to statutory damages, the plaintiff also seeks injunctive relief. Specifically the plaintiff seeks to have the defendant enjoined from infringing the protected designs. In order to be granted an injunction the movant must show that it is entitled to injunctive relief under the applicable statutes and that it meets the prerequisites for the issuance of an injunction. *King Vision Pay-Per-View, Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 507 (E.D.N.Y. 2006). The former requirement is met because the Lanham Act vests the court with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to

prevent the violation of any right of the registrant." 15 U.S.C. § 1116. The latter requirement is

met where a party has succeeded on the merits, *Pita v. Tulcingo Car Serv.*, No. 10-CV-0481,

2011 WL 1790833, at *6 (E.D.N.Y. Apr. 7, 2011) (quoting *Roach v. Morse*, 440 F.3d 53, 56 (2d

Cir. 2006)), and establishes,

> (1) that it has suffered an irreparable injury; (2) that remedies available at law,
> such as monetary damages, are inadequate to compensate for that injury; (3) that,
> considering the balance of hardships between the plaintiff and the defendant, a
> remedy in equity is warranted; and (4) that the public interest would not be
> disserved by a permanent injunction**.**

*Id.* (quoting *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (citing *eBay, Inc. v.*

*MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). *See also United States Polo Ass'n v. PRL*

*USA Holdings, Inc.*, No. 09-CV-9476, 2011 WL 1842980, at *19 (S.D.N.Y. May 13, 2011)

(applying the factors in *Salinger* to trademark infringement actions). The first element, whether

the plaintiff has established an irreparable injury, is the only factor at issue here. In order to

satisfy the irreparable harm requirement, the moving party must show that the injury it will suffer

is "likely and imminent" and that "such injury is not capable of being fully remedied by

monetary damages." *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995).

Permanent injunctions are appropriate when infringement has been established and there is a

substantial likelihood of future violations. *Boisson v. Banian, Ltd.*, 280 F. Supp. 2d 10, 15

(E.D.N.Y. 2003), *citing Central Point Software, Inc. v. Global Software & Accessories, Inc.*, 880

F. Supp. 957, 966 (E.D.N.Y. 1995).

Rather than presuming irreparable harm, the plaintiff must show that the failure to issue

an injunction would cause irreparable harm. *United States Polo*, 2011 WL 1842980, at *20 n.18

(quoting *Salinger*, 607 F.3d at 82). "Irreparable harm exists in a trademark case when the party

seeking the injunction shows that it will lose control over the reputation of its trademark . . .

because loss of control over one's reputation is neither 'calculable nor precisely compensable." *Id.* at *21 (quoting *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010)).

The plaintiff has established the prerequisites for a permanent injunction in its favor. This is particularly appropriate since the plaintiff has continued to find advertisements on www.craigslist.org since this lawsuit was filed. A monetary award alone would not be sufficient to remedy the situation at hand. Every time the defendant sells a product with a Rolex Registered Trademark, Rolex loses control over the reputation of its trademark. Accordingly, the defendant should be permanently enjoined from using the name "Rolex" or any of the Rolex Registered Trademarks in any manner in connection with the conduct of its business and the sale of its products, including on its website or domain name. The court should order the permanent injunction in substantially the form the plaintiff has sought in their moving papers. *See* Plaintiff's Mem. at 16.

## V.     ATTORNEY'S FEES AND COSTS

The plaintiff is seeking an award of $6,697, consisting of $6,347 for attorney's fees and $350 for costs. *See* Plaintiff's Mem. at 15. The Lanham Act provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). A willful infringement may be considered an exceptional case under the Lanham Act. *See Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995). As discussed above, the defendant's persistent use of the plaintiff's marks after being arrested twice, is sufficient proof to establish willful infringement. An award of reasonable attorneys' fees and costs is therefore appropriate in this action.

## A.     The Presumptively Reasonable Fee

Establishing the amount of reasonable attorneys' fees has been the subject of extended discussion in the Second Circuit in recent years.  *See generally Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009); *Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009); *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), *superseding* 493 F.3d 110 (2d Cir. 2007).  Reasonable attorneys' fees used to be calculated by what was known as the "lodestar" method, which entailed determining the "number of hours reasonably expended on the litigation [and] multipl[ying that figure] by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Whitney v. Jetblue Airways Corp.*, No. 07-CV-1397, 2009 WL 4929274, at *2 (E.D.N.Y. Dec. 21, 2009) (providing background and history).  Courts would then adjust the lodestar figure by a multiplicative figure, if need be, to reflect the specific considerations of a particular case.  *See Arbor Hill*, 522 F.2d at 186, 190.  The reasonableness of hourly rates was guided by the market rate "[p]revailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation,"  *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Hensley*, 461 U.S. at 433, while the relevant community was generally the "district in which the court sits," *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).

More recently, however, the Second Circuit signaled a departure from the "lodestar" language, in favor of a modified approach that focuses on calculating a "presumptively reasonable fee."  *See Arbor Hill*, 522 F.3d at 190; *see also Simmons*, 575 F.3d at 172; *Barfield*, 537 F.3d at 151.  Notwithstanding the abandonment of the "lodestar" approach, the presumptively reasonable fee is still determined by reference to the number of hours reasonably

expended on a matter and the reasonable fee to be charged for those hours. *See generally Bliven*, 579 F.3d at 213. Under this approach, the court considers a multitude of case-specific factors[6] in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplies that rate by the number of hours reasonably spent on the case. *Arbor Hill*, 522 F.3d at 184, 190. The product is known as the presumptively reasonable fee. *See id.* Thus, district courts must now "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190 (emphasis in original). This determination is undertaken consistent with the principle that a "reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190.

The Second Circuit recently clarified the contours of its approach to attorneys' fees and the presumptively reasonable fee. *See McDaniel v. County of Schenectady*, 595 F.3d 411 (2d Cir. 2010). The Circuit reiterated that the presumptively reasonable fee represents an approximation of "what a competitive market would bear." *Id.* at 420. Whereas the traditional lodestar approach had multiplied the hourly rate by the number of hours worked and *then* used the *Johnson* factors to reflect case-specific considerations, the *Arbor Hill* approach essentially

---

[6] These factors include, but are not limited to, the "complexity and difficulty of the case, the available expertise and capacity of the client's other counsel, the resources required to prosecute the case effectively, the timing demands of the case, [and] whether an attorney might have an interest in achieving the ends of the litigation or might initiate the representation himself," – *Arbor Hill*, 522 F.2d at 184, 187-90 – as well as the twelve factors the Fifth Circuit employed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The *Johnson* factors include (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to properly perform the relevant services; (4) the preclusion of other employment attendant to counsel's acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases. *Johnson*, 488 F.2d at 717-19.

front-loads the *Johnson* factors.[7]  *See McDaniel*, 595 F.3d at 420 (citing *Arbor Hill* and assessing case-specific considerations at the "outset, [and] factoring them into [the court's] determination of a reasonable hourly rate for the attorneys' work."); *see also Saunders v. City of New York*, No. 07-CV-830, 2009 WL 4729948, at *6 (S.D.N.Y. Dec. 9, 2009) (contrasting the lodestar and *Arbor Hill* methods and describing how the latter considers *Johnson* factors "earlier in the fee calculation process").  The court in *McDaniel* observed that

> [f]rom a mathematical perspective, of course, it makes little difference whether a court, following *Arbor Hill*, considers case-specific factors to estimate a reasonable rate for an attorney's services, which is then multiplied by the number of hours worked, or whether the court takes the traditional approach and considers those same factors in calculating a multiplier to the lodestar.  The benefit of *Arbor Hill's* [sic] methodology is that by considering case-specific factors at the outset, the district court's focus on mimicking a market is maintained.

595 F.3d at 422 (citing *Arbor Hill*, 522 F.3d at 192); *see also Saunders*, 2009 WL 4729948, at *6.

Last year, the Supreme Court issued a seemingly strong endorsement of the more traditional lodestar approach and lodestar language.  *See Kenny A.*, 130 S. Ct. at 1672-74.  The extent to which the Court's use of the lodestar in that case implicitly calls into question the Second Circuit's endorsement of a presumptively reasonable fee and rejection of both the

---

[7] The Supreme Court has recently expressed skepticism with the propriety of the *Johnson* approach, arguing that it gives too little guidance to judges by placing the emphasis on factors and considerations that are overly subjective.  *See Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672 (2010) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986)).  Instead, it found that the lodestar approach provided better limits on a judge's discretion by making the determination more objective, providing for fee awards that are more predictable and less disparate.  *See Kenny A.*, 130 S. Ct. at 1672.  However, the *Johnson factors*, as opposed to the *Johnson method*, are still relevant in informing the court's determination of a reasonable fee and a reasonable hourly rate.  *See McDaniel*, 595 F.3d at 422.  *Kenny A.* cautions against using a strict *Johnson* approach as the primary basis for determining reasonable attorneys' fees, but nowhere calls into question the idea of using relevant *Johnson* factors in helping to come to a reasonable fee.  Indeed, the Court's fears of unrestrained discretion in applying a pure *Johnson* approach are largely absent from the more cabined methods of calculating a presumptively reasonable fee in this Circuit.

lodestar approach and lodestar language, is less than clear.  The Court recognized, however, that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  *Id.* at 1672 (emphasis in original).  That too is the primary focus of the *Arbor Hill* line of cases.  The court also noted that relevant, case-specific factors such as the novelty or complexity of the case are already "subsumed" or "included" in the lodestar figure when determining a reasonable fee.  *See Kenny A.*, 130 S. Ct. at 1673 (citing authorities).  Therefore, whether the calculation is referred to as the lodestar or as the presumptively reasonable fee, courts will take into account case-specific factors to help determine the reasonableness of the hourly rates and the number of hours expended.

### 1.      Reasonable Hourly Rate

The plaintiff in this case is represented by the firm Gibney, Anthony & Flaherty, LLP. Gibney has submitted an affirmation concerning rates charged for one associate, one partner, and two paralegals who performed work on the matter.  First, the plaintiff requests attorneys' fees for the work of John Macaluso.  Mr. Macaluso is a partner at Gibney, Anthony & Flaherty, LLP.  He has 20 years of experience that focuses mostly in intellectual property law and bills at $375 per hour.  The plaintiff requests a total of $675 for his work on this case.  Second, the plaintiff requests attorneys' fees for the work of Walter-Michael Lee.  Mr. Lee is an eighth-year associate who customarily bills at $250 per hour.  He deals mostly with intellectual property law and performed the majority of work on this case.  The plaintiff requests a total of $4,425 for his work.  The plaintiff requests a total of $1,071 for paralegal Tina Ferraioli who bills at $170 per hour and $176 for paralegal Evan Howlett who bills at $110 per hour.  The plaintiff also requests

$350 for filing costs. *See* Affirmation of Walter-Michael Lee in Supp. of Pl.'s Mot. for Default

J. Against Def. Chanan Aulov, dated Mar. 29, 2011, ¶¶ 5-11 & Exhibit 2 (Docket No. 5).

As previously mentioned, the court establishes a reasonable hourly rate by looking to the

prevailing market rates for comparable services in the district in which the case is filed. *See*

*Blum*, 465 U.S. at 896 n.11; *Polk*, 722 F.2d at 25. In *Diplomatic Man, Inc. v. Brown*, the court

held that an hourly rate of $440 for a partner with 23 years experience and $315 for an eighth-

year associate was reasonable in intellectual property cases. No. 05-CV-9069, 2007 WL

2827125, at *2 (S.D.N.Y. Sept. 28, 2007). In *Pharel,* the court held that that a range of $165-

170 dollars for billing by paralegals was reasonable. 2011 WL 1131401, at *7 n.1.

Further, *Whitney* collected recent cases on reasonable hourly rates for partners and

associates in the Eastern District of New York. *See Whitney*, 2009 WL 4929274, at *7 (listing

cases and approving an hourly rate of $350 for experienced attorney seeking a $450 hourly rate).

As the court observed, the "rates applied in this district have ranged widely depending on the

nature of the firm, the experience of the lawyer and the type of case." *Id*. As *Whitney* was

decided recently and sets forth a good catalogue on rates, it is worth surveying the cases it cited.

*See Gutman v. Klein*, No. 03-CV-1570, 2009 WL 3296072, at *2-3 (E.D.N.Y. Oct. 13, 2009)

(approving hourly rates between $300 and $400 for partners, $200 and $300 for senior

associates, and $100 and $200 for junior associates); *Melnick v. Press*, No. 06-CV-6686, 2009

WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009) (noting market rates of between $200 and $375

for partners and between $100 and $295 for associates); *Moran v. Sasso*, No. 05-CV-4716, 2009

WL 1940785, at *4 (E.D.N.Y. July 2, 2009) (noting rates of $200 to $350 for partners and $200

to $250 for senior associates); *Duverger v. C & C Duplicators, Inc.*, No. 08-CV-0721, 2009 WL

18132229, at *2 (E.D.N.Y. June 25, 2009) (listing market rates as between $200 and $350 for

partners, and $200 and $250 for senior associates); *Motorola, Inc. v. Abeckaser*, No. 07-CV-3963, 2009 WL 2568529, at *4-5 (E.D.N.Y. Aug. 5, 2009); *Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.*, No. 07-CV-656, 2007 WL 4324019, at *6 (E.D.N.Y. Dec. 7, 2007) (providing market rates between $200 and $375 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates); *Baruch v. Healthcare Receivable Mgmt, Inc.*, No. 05-CV-5393, 2007 WL 3232090, at *5 (E.D.N.Y. Oct. 30, 2007) (noting hourly rates of $200 to $375 for partners); *Expeditors Int'l of Wash., Inc. v. Rubie's Costume Co., Inc.*, No. 03-CV-3333, 2007 WL 430096, at *2 (E.D.N.Y. Feb. 2, 2007) (noting partner rates between $200 and $375 per hour).

As the hourly rates requested here are well within the ranges provided by these cases, the court should adopt them when calculating the presumptively reasonable fee. There is little about the particular circumstances of this case that would warrant an hourly rate either higher than or lower than the market rate in this district and the hourly rates requested.

### 2. Reasonable Number of Hours Worked

Even after *Arbor Hill* modified the lodestar approach, determining reasonable attorneys' fees still requires a review of reasonably detailed contemporaneous time records, as contemplated by *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Courts are given broad discretion to evaluate the reasonableness of the number of hours expended. *See Anderson v. Sotheby's, Inc.*, No. 04-CV-8180, 2006 WL 2637535, at *1 (S.D.N.Y. Sept. 11, 2006); *see also Hensley*, 461 U.S. at 434; *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997); *Duke v. County of Nassau*, No. 97-CV-1495, 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003). In considering what is reasonable, courts "should exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d

Cir. 1999) (citing *Hensley*, 461 U.S. at 434).  Courts should consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).  Gibney has submitted billing records that show for each attorney the date on which the work was performed, the nature of the work, and the hours spent on the matter.  *See* Affirmation of Walter-Michael Lee in Supp. of Pl.'s Mot. for Default J. Against Def. Chanan Aulov, dated Mar. 29, 2011, Exhibit 2 (Docket No. 5).  The number of hours billed on this case – 36.4 – is reasonable for this type of case.  *See, e.g.*, *Mamiya America Corp. v. HuaYi Brothers, Inc.*, No. 09-CV-5501, 2011 WL 1322383, at *12 (E.D.N.Y. March, 11 2011) (awarding fees for 37.7 hours of work on default trademark infringement case); *Protection One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC*, 553 F. Supp. 2d 201, 208-10 (E.D.N.Y. 2008) (awarding fees for approximately 65 hours of work on default trademark infringement case).  Given the limited hours spent on this case and the nature of the work performed, it is not necessary to eliminate excessive or duplicative hours. The attorneys' fees requested by the plaintiff should be awarded.

### B.     Costs

Gibney also requests an award of costs in the amount of $350.  A prevailing party is entitled to compensation for out-of-pocket expenses that are normally charged to the client. *United States Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir. 1989). The plaintiff's affirmation attributes the $350 solely to the cost of filing fees.  *See* Affirmation of Walter-Michael Lee in Supp. of Pl.'s Mot. for Default J. Against Def. Chanan Aulov, dated Mar. 29, 2011, ¶¶ 10-11 (Docket No. 5).  Filing fees are generally compensable.  *See, e.g., Levy v. Powell*, No. 00-CV-4499, 2005 WL 1719972, at *12 (E.D.N.Y. July 22, 2005); *Rotella v. Board of Educ. of City of New York*, No. 01-CV-0434, 2002 WL 59106, at *1 (E.D.N.Y. Jan. 17, 2002).

The amount sought also appears reasonable.  Therefore, the court recommends an award of costs of $350.

## CONCLUSION

In accordance with the above considerations, the undersigned hereby recommends that a default judgment be entered against the defendant Chanan Aulov, awarding the plaintiff $1,000,000 in statutory damages, $6,697 in attorney's fees and costs, and permanently enjoining the defendant from using the Rolex name and trademarks for commercial purposes.

\*          \*          \*          \*          \*          \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g.*, *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir. 1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendant by regular mail and file proof of such service in the record.**

**Respectfully recommended**:

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:  Brooklyn, New York
          July 15, 2011